UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FRED DANIEL REEVES, JR.,

    Plaintiff,                          CIVIL ACTION NO. 09-10825

    v.                                     DISTRICT JUDGE GERALD E. ROSEN

DONALD SPAULDING, PERRY             MAGISTRATE JUDGE MARK A. RANDON
ILLIG, JAMES LAMBLIN, CINDY
MORRISON, ERIC KORTMAN,
DANNY WILLS, CHERYL WOOD,
VICTOR STANLEY, THOMAS
BIRKETT, PEGGY OATLEY and
A. PETER GOVORCHIN,

    Defendants.
_____/

**REPORT AND RECOMMENDATION**

**I. RECOMMENDATION:** Defendants' motion to revoke Plaintiff's *in forma pauperis* (IFP) status under § 1915(g) filed on August 14, 2009 (Dkt. No. 32) should be **GRANTED**. This action should be **DISMISSED WITHOUT PREJUDICE** to Plaintiff refiling, after paying the full $350 filing fee.

**II. REPORT:** Plaintiff Fred Daniel Reeves, Jr. ("Reeves"), a Michigan prisoner appearing *pro per*, filed the present action under 42 U.S.C. § 1983. Defendants are Prison Food Service Director Donald Spaulding, Food Service Leaders Perry Illig, James Lamblin, Cindy Morrison, Eric Kortman, Danny Wills, Cheryl Wood and Victor Stanley, Warden Thomas Birkett, Registered Nurse/Dietician Peggy Oatley and Michigan Assistant Attorney General A. Peter Govorchin (collectively "Defendants"). In his Complaint, Reeves alleges that he was

-1-

transferred to the Standish Maximum Correctional Facility as a result of a settlement agreement in another lawsuit.  Reeves further alleges that he was told by Defendants Oatley and Govorchin that Standish Maximum did not provide a meal program for inmates with acid reflux (a condition Reeves claims to suffer from) and that if Reeves began to experience symptoms, he would be transferred to a facility that could provide a meal program for inmates with acid reflux.  Reeves also alleges in his Complaint that in March 2008, he began to experience "severe pain and choking in [his] sleep" as a result of his meal plan.  Reeves alleges that Defendants, despite being aware of his symptoms, refused to transfer him to a facility that provides a meal program which addresses his acid reflux.  In his prayer for relief, Reeves asks for a medical transfer to another facility; Reeves does not specifically request money damages.

Defendants filed a motion seeking revocation of Reeves' IFP status and dismissal of Reeves' Complaint, on the grounds that Reeves has three prior "strikes" against him (*i.e.* three prior lawsuits dismissed as frivolous).  Reeves did not file any response to Defendants' motion, despite being ordered by the undersigned to do so by no later than October 20, 2009.[1]  In his Complaint, however, Reeves concedes that he has three "strikes" against him, but argues that he

---

[1] It appears that Reeves was released from prison on or about August 7, 2009.  *See* http://www.state.mi.us/mdoc/asp/otis2.html.  Reeves has not provided the Court with an updated mailing address and the Michigan Dep't of Corrections has returned recent mailings from the Court as undeliverable.  Thus, it is possible that Reeves did not receive Defendants' motion (filed August 14, 2009, and mailed to Reeves' last known address at the St. Lewis Correctional facility) nor did Reeves receive the undersigned's order requiring Reeves to file a response to Defendants' motion (filed August 21, 2009, also mailed to the St. Lewis Correctional facility).  However, the undersigned recommends that the Court find that Reeves has an obligation to be diligent in prosecuting his case, and find that Reeves should have provided the Court with an updated mailing address, upon his release from prison nearly three months ago.  Indeed, filing a notice of change of address is not a procedure foreign to Reeves – on July 30, 2009, Reeves filed notice (Dkt. #27) with the Court that he was transferred to a different prison facility.  In any event, the Court should grant Defendants' motion, as it does not appear that Reeves has any valid response to Defendants' motion, as discussed below.

should be allowed to proceed IFP since his case falls under the "imminent danger of severe physical injury" exception to the three strikes rule.

## DISCUSSION

The Prison Litigation Reform Act ("PLRA") amended the procedural rules governing a prisoner's request for the privilege of proceeding *in forma pauperis*. As the Sixth Circuit has stated, the PLRA was "aimed at the skyrocketing numbers of claims filed by prisoners – many of which are meritless – and the corresponding burden those filings have placed on the federal courts." *Hampton v. Hobbs,* 106 F.3d 1281, 1286 (6th Cir. 1997). For that reason, Congress put into place economic incentives to prompt a prisoner to "stop and think" before filing a complaint; among these provisions is the requirement that litigants proceeding IFP make partial fee payments over time.

In addition, another provision reinforces the "stop and think" aspect of the PLRA by preventing a prisoner from proceeding *in forma pauperis* when the prisoner repeatedly files frivolous lawsuits. Known as the "three-strikes" rule, the provision states:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). The Sixth Circuit has upheld the constitutionality of the "three-strikes" rule of the PLRA against arguments that it violates equal protection, the right of access to the courts,

and due process, and that it constitutes a bill of attainder and is *ex post facto* legislation. *See Wilson v. Yaklich*, 148 F.3d 596, 604-6 (6th Cir. 1998).

As noted earlier, Reeves concedes in his Complaint that he has three prior "strikes" under § 1915(g). *See* Complaint, p. 2a. Reeves is a prolific filer of lawsuits in this Court and in the Western District of Michigan (W.D. Mich); records of this Court (and from the W.D. Mich) confirm that Courts have dismissed at least three prior cases filed by Reeves and that these dismissals fell under the auspices of § 1915(g).[2] Recognizing that he has at least three strikes against him, Reeves argues that the present case falls within the "imminent danger of serious physical injury" exception of Section 1915(g). The Sixth Circuit explained the "imminent danger" exception in *Rittner v. Kinder*, 290 Fed. Appx. 796, 797-8 (6th Cir. 2008) (finding that plaintiff-appellant's allegations either do not constitute threats of physical injury, are described with insufficient facts and detail, or are irrational or wholly incredible).

While the court in *Rittner* recognized that the Sixth Circuit has not specifically defined the term "imminent danger" for purposes of § 1915(g), other Circuits have held that to meet the

---

[2] *See Reeves v. Peters*, E.D. Mich. Case No. 08-13625 (denying Reeves IFP status and dismissing case without prejudice, pending payment of $350 filing fee). Indeed, in *Reeves v. Peters*, Magistrate Judge Binder recommended that Reeves be denied IFP status precisely because Reeves had three "strikes" against him and further recommended that Reeves did not meet the "imminent danger" exception of Section 1915(g). Judge Ludington adopted Magistrate Judge Binder's report and recommendation in all respects, over Reeves' objections. In the case before Judge Ludington, Reeves alleged that the defendants were violating his constitutional rights by preventing him from visiting an eye doctor (which allegedly placed him in "imminent danger"). Similarly, in *Reeves v. Peters*, E.D. Mich. Case No. 09-10322, Magistrate Judge Majzoub recommended that Reeves be denied IFP status, as he had three strikes against him. Judge Steeh adopted Magistrate Judge Majzoub's Report and Recommendation, over Reeves' objections. In the case before Judge Steeh, Reeves alleged that the defendants denied medical attention for heart problems, in retaliation for his filing prior lawsuits (which, again, allegedly placed Reeves in "imminent danger"). *See also, Reeves v. Grider*, W.D. Mich. Case No. 5:04-CV-185 (Judge McKeague), Opinion and Judgment dated November 30, 2004, which specifically states it is a dismissal under 28 U.S.C.A. § 1915 (g) (Dkt. #86, Ex. 1); *Reeves v. Eyers*, W.D. Mich. Case No. 1:04-CV-790 (Judge Enslen), Opinion and Judgment dated January 4, 2005, which specifically states it is a dismissal under 28 U.S.C.A. § 1915 (g). (Dkt. #86, Ex. 2); *Reeves v. Eyers*, W.D. Mich. Case No. 5:04-CV-202 (Judge Bell), Opinion and Judgment dated December 21, 2004 and Order Denying Reconsideration dated January 13, 2005, which specifically states it is a dismissal under 28 U.S.C.A. § 1915 (g) (Dkt. #86, Ex. 3).

requirement, the threat or prison condition "must be real and proximate" and the danger of serious physical injury must exist at the time the complaint is filed.  *See, e.g., Ciarpaglini v. Saini*, 352 F.3d 328, 330 (7th Cir. 2003); *Abdul-Akbar v. McKelvie*, 239 F.3d 307, 313 (3d Cir. 2001) (en banc).  Thus a prisoner's assertion that he or she faced danger in the past is insufficient to invoke the exception.  *Id.*  Other Circuits also have held that district courts may deny a prisoner leave to proceed pursuant to § 1915(g) when the prisoner's claims of imminent danger are "conclusory or ridiculous," *Ciarpaglini*, 352 F.3d at 331, or are "'clearly baseless' (*i.e.* are fantastic or delusional and rise to the level of 'irrational or wholly incredible')."  *Gibbs v. Cross*, 160 F.3d 962, 967 (3d Cir.1998) (quoting *Denton v. Hernandez*, 504 U.S. 25, 33 (1992)).

In this case, Reeves claims that he has been denied an appropriate meal program since March, 2008.  Reeves' Complaint was filed in March of 2009.  Reeves' references to past incidents of denial of an appropriate meal program do not establish that he is under imminent danger of serious physical injury.  Quite simply, it appears that any danger is not imminent.  Reeves' Complaint describes conduct that allegedly occurred at least a year before the Complaint was filed, and while Reeves was detained at a facility that no longer houses him.  Indeed, Reeves was transferred from Standish Maximum to a different prison, after he filed his Complaint.  On July 30, 2009, Reeves filed a notice of change of address (Dkt. #27) with the Court indicating that, as of that date, he was confined at the St. Louis Correctional Facility.  Moreover, as noted in Footnote 1 above, it appears that Reeves was released from prison altogether on August 7, 2009.

Accordingly, Reeves' claim for injunctive relief requesting a medical transfer from Standish Maximum to a facility offering an acid reflux diet is moot, since a transfer to another prison (or a release from prison) moots a prisoner's request for declaratory or injunctive relief.

*See Preiser v. Newkirk*, 422 U.S. 395, 402-03 (1975); *Dellis v. Corrections Corp. of America*, 257 F.3d 508, 510 n. 1 (6th Cir. 2001) ("Plaintiff also requested injunctive and declaratory relief in his complaint; however, because he is no longer incarcerated ... these prayers for relief are moot."); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) ("to the extent Kensu seeks declaratory and injunctive relief his claims are now moot as he is no longer confined to the institution that searched his mail."); *Abdur-Rahman v. Michigan Department of Corrections*, 65 F.3d 489, 491 (6th Cir. 1995) ("Rahman has been transferred from the State Prison of Southern Michigan in Jackson, Michigan. Therefore, because of Rahman's transfer, his request for injunctive relief is now moot."); *Goar v. Civiletti*, 688 F.2d 27, 29 (6th Cir. 1982) ( "the injunctive relief sought is now moot since Goar is no longer imprisoned."); *Tanney v. Boles*, 400 F.Supp.2d 1027, 1039 & n. 9 (E.D. Mich. 2005) (Roberts, J.) ("The Sixth Circuit has consistently found that, like a claim for injunctive relief, an inmate's claim for declaratory relief based on prison conditions or treatment becomes moot once the inmate is transferred or released.").

Finally, Reeves' allegations must be considered in light of his history of vexatious and unsubstantiated litigation. Quite simply, Reeves has, by establishing a reputation for duplicity in the federal courts, diminished the faith the Court can place in his allegations. *See Johnson v. Edlow*, 37 F.Supp.2d 775, 776 (E.D. Va. 1999) (determining whether action is malicious, court "must look not only to the complaint before it, but also the plaintiff's prior litigious conduct").

## **CONCLUSION**

For the reasons set forth above, I conclude that: (1) Reeves has filed more than three lawsuits that were dismissed on the grounds that they were frivolous, malicious, or failed to state a claim upon which relief may be granted; and (2) the allegations in Reeves' Complaint do not

warrant application of the imminent danger exception in 28 U.S.C. § 1915(g).  Accordingly, it is **RECOMMENDED** that Defendants' motion to revoke Reeves' IFP status be **GRANTED** and that this matter be **DISMISSED, WITHOUT PREJUDICE** to Reeves refiling this action, after paying the full $350 filing fee.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court.  The response shall address each issue contained within the objections specifically and in the same order raised.

S/Mark A. Randon
MARK A. RANDON
UNITED STATES MAGISTRATE JUDGE

Dated:  November 4, 2009

Certificate of Service

I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, November 4, 2009, by electronic and/or ordinary mail.

s/Melody R. Miles
Case Manager to Magistrate Judge Mark A. Randon